J-S10030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  D.W.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  D.W.G., A MINOR | No. 2037 EDA 2015 |

Appeal from the Dispositional Order entered June 9, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-JV-0001349-2014

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:          **FILED MARCH 01, 2016**

D.W.G. appeals from the dispositional order entered following the adjudication of his delinquency on June 9, 2015, for acts constituting simple assault, terroristic threats, criminal mischief, and possessing an instrument of crime.[1]  Additionally, his court-appointed counsel, Elizabeth A. Schneider, Esq., seeks to withdraw her representation of Appellant pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We affirm the judgment of sentence and grant counsel's petition to withdraw.

The Commonwealth adduced the following evidence:

At the hearing, the victim, Ms. Eldridge testified that on October 14, 2014, she waited in her Mitsubishi Montero, an SUV, outside of her home on Park Lane, Darby Borough, Delaware County,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] ***See*** 18 Pa.C.S. §§ 2701(a)(1), 2706(a)(1), 3304(a)(5), and 907(a), respectively.

Pennsylvania. Ms. Eldridge said she parked her SUV on the street while waiting for her children to get ready for football and cheerleading practice. The back door to her vehicle remained open allowing her children to load their practice gear.

At approximately 5:40 P.M. [Appellant's] mother drove up alongside Ms. Eldridge's vehicle and asked who hit her son. Ms. Eldridge, having never seen the woman before, responded that no one had hit her son. [Appellant's] mother then drove her vehicle around the nearby cul-de-sac and parked on the street opposite Ms. Eldridge's vehicle. [Appellant], his brother, and his mother each emerged from the vehicle. At this point, Ms. Eldridge removed herself from her SUV, closed the back of her Montero, and stood beside it.

[Appellant's] brother maneuvered around Ms. Eldridge's SUV and attacked her, while [Appellant] himself went to the steps of the Eldridge home and attacked her son, H.L. Advancing on H.L., [Appellant] said that he was going to "'F' him up," and punched him, closed fist, at least twice in the chest and arm. Ms. Eldridge saw nothing further between [Appellant] and her son as she was subjected to [Appellant's] brother's aggression. H.L. testified that he and [Appellant] were fighting over "something stupid" and "over money that had been missing." H.L. also declared that, although [Appellant] threw the first punch, the fight was "technically" his own fault. H.L. further testified that, after the two hits from [Appellant], the fighting between them "just stopped."

[Appellant] then approached Ms. Eldridge, punching her twice and kicking her at least four times. Ms. Eldridge claim[ed] that none of the attacks made contact with her person, but she was covering her face while this occurred. During cross-examination, Ms. Eldridge explained that she was not hit by any of the punches because she was being pulled back by her "life partner." However, in the midst of the fray, Ms. Eldridge sustained an injury to her left hand in "the webbing" between her thumb and forefinger, which required 15 stitches and reconstructive surgery. Although she never saw who or what injured her hand, Ms. Eldridge heard [Appellant] say, "that's why I have your hand leaking[.]" [T]his alerted her to the blood present on her jeans, shirt, and sneakers. Her son testified that he noticed his mother bleeding from her hand in the area described, and he heard something from [Appellant] that sounded like "that's why you're

bleeding." Officer Robert Barber, with the Darby Borough Police Department, also noticed that Ms. Eldridge had her hand wrapped in a bloody cloth when he later arrived. Vigorous cross-examination revealed that, at a preliminary hearing (held on January 14, 2015), Ms. Eldridge testified that she did not know who attacked her hand, nor did she mention the statement "that's why I have your hand leaking."

After commenting on Ms. Eldridge's injury, [Appellant] procured a bat from his mother's vehicle and shattered the windows to the Montero along the passenger side, and on the front windshield. The insurance deductible for the damage totaled … $500. Ms. Eldridge was the one who called 9-1-1. The officer testified that he was the first to arrive on the scene in response to the 9-1-1 call, and, while pulling up, noticed [Appellant] was standing near the Montero holding a silver baseball bat. Approaching the back seat of [Appellant's] mother's car, the Officer saw, in plain view, another bat, this one gold in color.

Trial Court Opinion, 08/07/2015, at 1-3 (unnumbered) (citations to transcript omitted).

In June 2015, the trial court conducted a hearing, following which the trial court adjudicated Appellant delinquent and placed him on probation. Appellant timely appealed; however, the trial court did not direct him to file a Pa.R.A.P. 1925(b) statement. Thereafter, Appellant's trial counsel was granted leave to withdraw. In July 2015, the court appointed Attorney Schneider to represent Appellant.

In October 2015, Attorney Schneider filed a petition to withdraw from representing Appellant. She has also filed an **Anders** brief, asserting that there are no non-frivolous issues that could be raised in this appeal.

This Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented

by [the appellant]. ***Commonwealth v. Goodwin***, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).

Prior to withdrawing as counsel on a direct appeal under ***Anders***, counsel must file a brief that meets the requirements established by our Supreme Court in ***Santiago***. The brief must:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361. Counsel also must provide a copy of the ***Anders*** brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the ***Anders*** brief." ***Commonwealth v. Nischan***, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

***Commonwealth v. Orellana***, 86 A.3d 877, 879-880 (Pa. Super. 2014).

Because this matter concerns a juvenile adjudication, counsel must notify the juvenile's parents or legal guardian when moving to withdraw. ***See Commonwealth v. Heron***, 674 A.2d 1138, 1140 (Pa. Super. 1996). After determining that counsel has satisfied these technical requirements of ***Anders*** and ***Santiago***, this Court must then "conduct an independent review of the record to discern if there are any additional, non-frivolous

issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

Here, Attorney Schneider's *Anders* brief complies with the above-stated requirements. She includes a summary of the relevant factual and procedural history; she refers to portions of the record that could arguably support Appellant's claims; and she sets forth her conclusion that Appellant's appeal is frivolous. She explains her reasons for reaching that determination, supporting her rationale with citations to the record and pertinent legal authority. Attorney Schneider also states in her petition to withdraw that she has supplied Appellant with a copy of her *Anders* brief, and she attaches a letter directed to Appellant in which she informs him of the rights enumerated in *Nischan*. Moreover, she has satisfied the *Heron* requirement because her letter is addressed to Appellant in care of his mother. Application to Withdraw Appearance, 10/05/2015, at Exhibit A. Accordingly, Attorney Schneider has complied with the technical requirements for withdrawal.

We will now independently review the record to determine if Appellant's claims are frivolous, and to ascertain whether there are other, non-frivolous issues Appellant could pursue on appeal. According to Attorney Schneider, Appellant contends that the evidence was insufficient to

adjudicate him delinquent for acts constituting terroristic threats. *See*

*Anders* Brief at 2 and 5.[2]

Appellant contends that the evidence of terroristic threats was too weak and inconclusive to permit a reasonable fact finder to adjudicate him delinquent. *See, generally*, *Commonwealth v. Bevin*, 309 A.2d 421, 424-25 (Pa. 1973) (recognizing that "[a] case is sufficient for a jury to find guilt unless the proof relied upon for a conviction is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances."). According to Appellant, only a single Commonwealth witness heard Appellant state, while advancing on H.L., that he was going to "'F' him up." As noted by Appellant, this statement was not corroborated by H.L., the alleged target of Appellant's threat.

> In a juvenile proceeding, the hearing judge sits as the finder of fact. The weight to be assigned the testimony of the witnesses is within the exclusive province of the fact finder. In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

_____

[2] Appellant's statement of the question presented references the insufficiency of evidence more generally. *See Anders* Brief at 2. However, Appellant's argument focuses solely on terroristic threats. *Id.* at 5.

*In re L.A.*, 853 A.2d 388, 391 (Pa. Super. 2004) (internal citations omitted). Moreover, the fact finder "is free to believe all, part, or none of the evidence." *Commonwealth v. Newton*, 994 A.2d 1127, 1132 (Pa. Super. 2010).

To establish delinquency for terroristic threats, the Commonwealth must prove that (1) the juvenile made a threat to commit a crime of violence; and (2) such threat was communicated with the intent of terrorizing another or with reckless disregard for the risk of causing terror. *In re L.A.*, 853 A.2d at 392; *see also* 18 Pa.C.S. § 2706(a)(1). "A direct communication between the defendant and the victim is not required to establish the crime of terroristic threats." *In re L.A.*, 853 A.2d at 392. Finally, the trial court may infer an intent to terrorize from the totality of the circumstances. *In re J.H.*, 797 A.2d 260, 263 (Pa. Super. 2002).

Here, Ms. Eldridge testified that Appellant threatened to commit an act of violence upon her son, H.L., when Appellant declared that he was going to "'F' him up." Notes of Testimony, 06/09/2015, at 15. The trial court credited this statement. As the fact finder, the court was free to do so. *Newton*, 994 A.2d at 1132. Moreover, it was unnecessary for the Commonwealth to establish that H.L. heard the threat. *In re L.A.*, 853 A.2d at 392. Rather, it was sufficient that Ms. Eldridge heard Appellant's threat. *Id.* Finally, the trial court properly inferred an intent to terrorize from Appellant's subsequent acts of violence. *In re J.H.*, 797 A.2d at 263.

For the above reasons, Appellant's claim is frivolous. Moreover, our review of the record reveals no other non-frivolous issues Appellant could assert on appeal.

Order affirmed. Petition to withdraw granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/1/2016